Case No. SA CV 18-0518-DOC (GJSx)          Date: June 21, 2018

Title: PATRICIA DALEY V. WALMART STORES, INC., ET AL

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Lewman | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [14]**

Before the Court is Plaintiff Patricia Daley's ("Daley" or "Plaintiff") Motion to Remand ("Motion") (Dkt. 14). The Court finds this matter suitable for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the papers and considered the parties' arguments, the Court GRANTS Plaintiff's Motion.

**I.  Background**

    **A.  Facts**

The Court draws the facts from Plaintiff's Complaint. *See* Declaration of Mitchell A. Wrosch (Dkt. 1-2) Ex. A (Complaint).

Plaintiff Daley is an individual who resides in Orange County, California and, at all times mentioned herein, was an employee of Defendant Walmart ("Defendant" or "Walmart") at its store located at 26502 Towne Centre Drive, Foothill Ranch, California 92610. Compl. ¶ 1. Walmart is a corporation conducting business in Orange County, California. *Id*. ¶ 2. Each business entity of Walmart and Doe Defendants 1-25 are in some manner involved in in the ownership and/or operation of the Defendant corporation. *Id*.

¶ 3. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-25, inclusive, and therefore sues these defendants by such fictitious names. *Id.* ¶ 4.

Plaintiff was born with cerebral palsy and has been wheelchair-bound her entire life. *Id.* ¶ 6. She began her employment at Walmart on October 18, 2003 as a greeter, and was responsible for greeting customers as they entered the store, providing customer service, directing customers, and thanking customers as they exited the store. *Id.* ¶¶ 8, 10. Shortly after she began her employment with Walmart, Plaintiff was also given the responsibility of taking "go-backs" to their correct position in the store. *Id.* ¶ 11. On February 12, 2004, Plaintiff was promoted from being a temporary associate to a permanent part-time associate. *Id.* ¶ 9. From October 2003 through 2016, Plaintiff did not receive any performance warnings or write-ups related to her job duties and responsibilities. *Id.* ¶ 12.

After years of successful performance of her job duties and responsibilities, on or around January 3, 2017, Daley received a written warning for allegedly failing to greet customers as they walked in and out of the store. *Id.* ¶¶ 13–26. On or around February 15, 2017, Plaintiff received a second written warning for allegedly not being at the door and for allegedly allowing non-service animals in the store. *Id.* ¶ 27. Plaintiff alleges that she was not given the opportunity to explain her side of the story on why she was not at the door at the time, when she was away from the door because she was helping a customer, another one of her job duties and responsibilities. *Id.* ¶ 28. Daley had asked another Walmart employee to cover the door in her absence, consistent with store policy, and the non-disabled employee who covered the door did not receive a written warning for failing to greet customers as they entered and left the store. *Id.* ¶ 28.

Plaintiff alleges that her non-disabled coworkers routinely allowed non-service animals into the store and did not receive disciplinary actions. *Id.* ¶ 29. In 2017, Daley was stripped of her job duties and responsibilities of returning "go-backs" to their correct position in the store. *Id.* ¶ 30. Plaintiff's "go-back" responsibilities were taken away shortly after Charles Edwards ("Edwards") became the Store Manager of the Walmart store where Plaintiff worked. *Id.* ¶ 31.

On or around June 29, 2017, Daley was given a third written warning for allegedly falling asleep on the job, failing to greet customers, and failing to check re-merchandise. *Id.* ¶ 32. Plaintiff contends that at the meeting during which she received her third warning, Edwards told Daley that she was no longer doing "go-backs" because he needed someone who could walk around the store, and she could not do that. *Id.* ¶ 33. She alleges

that Edwards followed up his comment by telling Daley, "Don't get me wrong Patty, I'm not discriminating against you." *Id.* ¶ 33.

After receiving her third warning, Daley enlisted the help of a job coach with Vocational Visions, Nancy Hunter ("Hunter"), who accompanied Daley during every shift she worked at Walmart from July 2017 to her termination. Compl. ¶¶ 35–36. Hunter evaluated and verified that Plaintiff was able to perform her job duties. *Id.* ¶ 37.

On September 28, 2017, Walmart terminated Daley's employment for "inability to perform job." *Id.* ¶ 38. Plaintiff claims the stated reason for her termination was illegal pretext and claims that she was terminated in whole, or in part, because she suffered from a known or perceived disability and/or a history of a disabling condition. *Id.* ¶ 39.

### B.　　Procedural History

On February 20, 2018, Plaintiff filed her Complaint in the Superior Court of California, County of Orange. *See* Compl. Plaintiff brings claims for: (1) discrimination based upon a physical disability in violation of California Fair Employment and Housing Act ("FEHA"), California Government Code § 12940, *et seq.*; (2) failure to prevent discrimination in violation of California Fair Employment and Housing Act, California Government Code § 12940, *et seq.*; (3) wrongful termination in violation of public policy; and (4) declaratory and injunctive relief. Compl. ¶¶ 42–71. In her prayer for relief, Plaintiff requests damages "according to proof" as well as specific declaratory and injunctive relief, and attorneys' fees. *Id.* at 11.

On March 27, 2018, Defendant removed the case to this Court based on diversity jurisdiction. *See* Notice of Removal ("Not. Rem.") (Dkt. 1). On April 25, 2018, Plaintiff filed the instant Motion, accompanied by Declaration of Christy W. Granieri ("Granieri Decl.") (Dkt. 14-2). On May 21, 2018, Defendant opposed ("Opposition") (Dkt. 15), accompanied by the Declaration of Mitchell A. Wrosch ("Wrosch Decl.") (Dkt. 15-1). On May 29, 2018, Plaintiff filed her Reply ("Reply").

## II.　　Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is

pending." 28 U.S.C. § 1441. A federal court may order remand for lack of subject matter jurisdiction or any defect in the removal procedure. 28 U.S.C. § 1447(c).

A federal court has diversity jurisdiction if: (1) the controversy is between "citizens of different States," and (2) the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity, meaning that no plaintiff can be from the same state as a defendant. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 679 (9th Cir. 2006).

In determining the amount in controversy, courts first look to the complaint. Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (footnote omitted). In cases in which the existence of diversity jurisdiction depends on the amount in controversy, "[t]he district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995)). A speculative argument regarding the potential value of the award is insufficient. *Id.* at 376; *Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir.1992). The amount in controversy includes claims for general and special damages (excluding costs and interests), including attorney's fees, if recoverable by statute or contract, and punitive damages, if recoverable as a matter of law. *See Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447, 450 (S.D. Cal. 1995); *Miller v. Michigan Millers Ins. Co.*, 1997 WL 136242, at *4 (N.D.Cal.1997).

Under recent Supreme Court precedent, the allegations in a defendant's notice of removal that the amount in controversy exceeds the jurisdictional threshold need only be "plausible." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, once the plaintiff challenges removal, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Id.*; *see also Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008).

While the defendant must "set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing as to require the defendant to "research, state, and prove the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id*. Summary judgment-type evidence

may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer*, 116 F.3d at 377. For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

## III.  Discussion

Defendant removed this action on the basis of diversity jurisdiction. *See* Not. Rem. at 3. Plaintiff does not contest the diversity of the parties. *See* Mot. Rather, Plaintiff argues that Defendant has not established that the amount in controversy exceeds $75,000. *Id.* at 2. In determining the amount in controversy, courts first look to the complaint, because "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Here, Plaintiff's complaint did not specify the amount in controversy or provide a dollar amount estimate of damages sought. *See generally* Compl. Instead, Plaintiff broadly requests damages from lost wages, lost bonuses, lost benefits, other pecuniary loss, emotional distress damages, and attorney's fees. Compl. ¶¶ 47–48. On the basis of Plaintiff's underlying claims and broad prayer for relief, Defendant claimed that the amount in controversy exceeds $75,000. *See* Not. Rem. at 3.

In her Motion, Plaintiff claims that Defendant miscalculated her lost wages for determining the amount in controversy by calculating at a 35 hour work week, when in actuality, Plaintiff was a part-time employee who worked under 35 hours every two weeks. Mot. at 3. Using a high estimate of 20 hours every two weeks at her earnings rate of $13.20/hour for 27 weeks,[1] Plaintiff's lost wages would come out to $6,864. *Id.* Plaintiff also claims that Defendant incorrectly analyzes her "front pay benefits," because the benefits are calculated using the schedule of when Plaintiff was available to work, and not the hours she actually did work. *Id.* at 4. Furthermore, Plaintiff asserts that she did not allege punitive damages in her complaint, which Defendant erroneously included. *Id.* at 5. Plaintiff also claims that her attorney's fees of $2,400 should be calculated at the time of removal, and that Defendant failed to reasonably estimate her emotional distress damages. *Id.* at 6–7. Therefore, Plaintiff claims that Defendant has failed to allege with specificity that the amount in controversy will be greater than the jurisdictional minimum. *Id.* at 2.

---

[1] Plaintiff does not specify how she has determined 27 weeks for the duration of the lost wages.

In response, Defendant explains that it requested that Plaintiff stipulate that she was seeking less than $75,000 in damages, but that Plaintiff refused, and Defendant argues that this refusal indicates that the amount in controversy is likely to be greater than $75,000. Opp'n at 4–5. However, this Court has established that "a plaintiff's refusal to stipulate that the amount in controversy is below the necessary threshold is not sufficient to establish the requirement." *Pereira v. Gate Gourmet, Inc.*, No. 08–07469 MMM(PJWX), 2009 WL 1212802, at *2, n.25 (C.D. Cal. Apr.30, 2009) (citing *Conrad*, 994 F. Supp. at 1199).

Next, Defendant responds that removal was proper even with a recalculation of damages because the aggregate of the lost wages and benefits, back pay, emotional distress damages, and attorney's fees will still exceed $75,000. Opp'n. at 5–6. Defendant recalculates the amount in controversy for lost wages in back pay as $5,834.40 (at $13.20/hour for 17 hours/week).[2] *Id.* at 6. Both parties agree that the amount of lost wages in controversy is at least $5,834.40. *See Id.*; Mot. at 3.

However, the parties dispute whether the amount in controversy encompasses any additional damages beyond lost wages through the time of removal. Defendant adds another year of back pay, up to an estimated trial date of April 2019, as well as one year of front pay. Opp'n at 6–7. Defendant also estimates attorney's fees at a rate of $300/hour in a range of 100–300 hours for an additional $30,000 minimum for attorney's fees in controversy. Opp'n at 11–12. Defendant also cites various cases to estimate the amount of emotional distress damages from a range of $160,000 to $625,000. *Id.* at 8–10. On the other hand, Plaintiff argues that lost wages and attorney's fees should be calculated only through the date of removal—rather than through the completion of trial, as Defendant claims—and that Defendant has not established any emotional distress damages. Reply at 6–10. The Court will address each of these issues—lost wages, attorney's fees, and emotional distress damages—in turn.

First, as to the parties' dispute about the relevant time period for calculating Plaintiff's lost wages, the Court agrees with Plaintiff that the weight of authority requires the Court to ascertain jurisdiction at the time of removal rather than at the time of trial. *Fortescue v. Ecolab Inc.,* No. CV 14-0253 FMO RZX, 2014 WL 296755, at *2 (C.D. Cal. Jan. 28, 2014) ("In determining the amount in controversy, the court declines to project lost wages forward to some hypothetical trial date."); *Soto v. Kroger Co.*, No. SACV 12-0780-DOC, 2013 WL 3071267, at *3 (C.D. Cal. 2013) ("The guiding principle is to measure amount in controversy at the time of removal"); *Haase v. Aerodynamics Inc.*, No. 2:09–CV–01751–MCE–GG, 2009 WL 3368519, at *4 (E.D. Cal. 2009) ("The

---

[2] Defendant does not specify the duration of time used in calculating this total.

amount in controversy must be determined at the time of removal."); *see Gardynski–Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938)) ("Jurisdiction depends on the state of affairs when the case begins; what happens later is irrelevant."); *see also Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002) (limiting amount of lost wages considered in amount in controversy to those accrued at time of removal). Because the estimated April 2019 trial date is just speculation, the Court will not consider the additional year of front and back pay for the amount in controversy. Thus, Defendant has only shown lost wages of $5,834.40 for the purpose of calculating the amount in controversy.

As for attorney's fees, district courts in the Ninth Circuit "are split as to whether a court should consider only attorneys' fees incurred as of the time of removal or fees reasonably likely to be incurred after the date of removal." *Bigby v. DS Waters of Am. Inc.,* 2013 WL 394876, at *7 (C.D. Cal. Jan. 30, 2013) (citations omitted). *Compare Reames v. AB Car Rental Servs., Inc.*, 899 F. Supp. 2d 1012, 1016 (D. Or. 2012) (measuring attorney's fees incurred as of the time of removal), *with Brady*, 243 F. Supp. 2d at 1010–11 ("A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy."). Although the Ninth Circuit has not clarified this issue to date, the Court finds persuasive the reasoning in *Reames* that attorney's fees should be calculated at the time of removal, because diversity jurisdiction is a limited grant of jurisdiction. *See Reames*, 899 F. Supp. 2d at 1016. Accordingly, the Court will not consider additional attorney's fees beyond the $2,400 accrued at the time of removal. Mot. at 8–9.

Finally, Plaintiff also seeks unspecified damages for emotional distress. *See* Mot. at 7. Emotional distress damages may be considered in determining the amount in controversy. *Kroske*, 432 F.3d at 980. To establish probable emotional distress damages, a defendant may introduce evidence of jury verdicts from cases with analogous facts. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); *Surber v. Reliance Nat. Indem. Co.,* 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000); *see Kroske*, 432 F.3d at 980 ("[T]he district court properly considered . . . emotional distress damage awards in similar age discrimination cases in Washington."). Defendant, in its Opposition, sets forth examples of jury verdicts in discrimination cases and shows that Plaintiff's estimated emotional distress damages might range from $160,000 to $625,000. "While settlements and jury verdicts in similar cases can provide evidence of the amount in controversy, the cases must be factually identical or, at a minimum, analogous to the case at issue." *Aguilar v. Wells Fargo Bank, N.A.*, No. EDCV 15-1833-AB (SPx), 2015 WL 6755199, at *5 (C.D. Cal. Nov. 4, 2015) (quoting *Mireles v. Wells Fargo Bank, N.A.*,

845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012)). The district court in *Aguilar* thus demanded a high level of factual similarity. *See id.* The court concluded that it was not enough for the example cases to involve allegations of discrimination and retaliation based on the plaintiff's race or national origin; the type and extent of discrimination had to be similar to the discrimination alleged in the *Aguilar* case. *Id.* at *5–6. Thus, the Court will determine whether the cases cited by Defendant are sufficiently analogous to the instant case to establish that emotional distress damages in the range of $160,000 to $625,000 should be included in the amount in controversy.

First, Defendant cites *Lowery v. YMCA, Inc.*, a California Superior Court Case in which a YMCA employee with cerebral palsy alleged that her supervisor made discriminatory comments about her condition. Opp'n at 9–10 (citing *Lowery v. YMCA, Inc.*, Case No. SCV077343, 44 Trials Digest 5th 3, at *1–2 (June 20, 2002)). She also claimed that her supervisor criticized her job performance, gave her a substandard evaluation, and refused to give her a raise after 20 years of performing her job. *Id.* The YMCA employee sued for disability harassment, disability discrimination, retaliation, violation of public policy, and intentional infliction of emotional distress and received emotional distress damages of $625,000. *Id.* However, the instant case is distinguishable from *Lowery* because, in *Lowery*, the plaintiff brought additional claims for disability harassment, retaliation, and intentional infliction of emotional distress, but Plaintiff here does not allege such claims. *See id.* Moreover, the plaintiff in *Lowery* was harassed by her supervisor for over a year, whereas Plaintiff does not allege harassment, retaliation, or intentional infliction of emotional distress. *See id.*

Next, Defendant cites *EEOC v. Target Stores*. Opp'n at 10 (citing *EEOC v. Target Stores*, JVR No. 1110200057, 2011 WL 6010563 (C.D. Cal. 2011). In that case, the EEOC sued on behalf of a cart attendant, also suffering from cerebral palsy, for disability discrimination and failure to accommodate his disability. *Id.* There, the parties settled for $160,000. *Id.* However, the present action is distinguishable from *EEOC* because the $160,000 was a general "total compensatory award" that cannot specifically indicate emotional distress damages. Defendant cites several other cases that do not have similar or analogous facts. *See* Opp'n Ex. E; Wrosch Decl. District courts require "analogous" or even "similar examples," albeit not identical cases. *Mejia v. Parker Hannifin Corp.*, No. CV178477MWFRAOX, 2018 WL 582325, at *3 (C.D. Cal. Jan. 26, 2018).

Nevertheless, "[w]ithout deciding whether this case is sufficiently analogous to those cited by Defendant, or quantifying the exact value of Plaintiff's claims for emotional distress," the Court recognizes that emotional distress damages in this action might potentially be substantial. *See Mejia* at *4; *Ponce v. Medical Eyeglass Center, Inc.*, 2015 WL 4554336, at *4 (C.D. Cal. Jul. 27, 2015); *Sasso v. Noble Utah Long Beach,*

*LLC*, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015); *see also Hurd v. Am. Income Life Ins.*, 2013 WL 5575073, at *7 (C.D. Cal. Oct. 10, 2013) ("Punitive damages and emotional distress damages in disability discrimination cases can be 'substantial' even when lost wages fall short of the jurisdictional minimum."). Thus, they are likely worth at least $1, but Defendant does not provide sufficient evidence to establish that they exceed the jurisdictional minimum of $75,000. Still, "that the evidence of the amount of emotional distress damages is limited, does not mean that it is appropriate to disregard the claim in determining the amount in controversy." *Garfias v. Team Industrial Services, Inc.* 2017 WL4512444 at *5 (C.D. Cal. 2017). Plaintiff argues it is reasonable to use a 1:1 ratio for emotional distress and economic damages, for a maximum of $6,864 in emotional distress damages (using the same calculation for lost wages). Reply at 10; *see Garfias* 2017 WL4512444 at *5. This approach may be reasonable, but the Court need not estimate an exact amount for emotional distress damages because, in any case, Defendant has failed to establish by a preponderance of the evidence that the emotional distress damages are in the range of $65,000, which is what would be required to approach the jurisdictional minimum.

Ultimately, the amount in controversy, for purposes of jurisdiction, is the total amount at stake in the underlying litigation. *See Bank of America Nat. Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972) (in an action by a single plaintiff against a single defendant, the value of all claims are aggregated to calculate the amount in controversy). As stated above, Defendant has shown that there is at least $5,834.40 in lost wages, $2,400 in attorney's fees, and at least $1 in emotional distress damages at stake. Even including Plaintiff's calculation for emotional distress damages, Defendant has failed to prove that, more likely than not, the amount in controversy exceeds the $75,000 jurisdictional minimum. *See Coleman*, 730 F. Supp. 2d at 1148.

Accordingly, the Court GRANTS Plaintiff's Motion to Remand.

## IV.   Attorney's Fees and Costs

Plaintiff requests $2,400 in attorney's fees under 28 U.S.C. § 1447(c). Mot. at 8. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Plaintiff claims that Defendant improperly analyzed the damages in this case by erroneously adding punitive damages when none were claimed and miscalculating lost wages, and that Defendant thus had no objectively reasonable basis for seeking removal. *Id.* Defendant admits it made various errors in the process, but took proper steps to correct them upon notice. Opp'n at 13. Defendant claims that its error in including punitive damages stemmed from a previous error by Plaintiff's counsel. *Id.* "Absent

unusual circumstances, attorney's fees should not be awarded [under 28 U.S.C. § 1447(c)] when the removing party has an objectively reasonable basis for removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *see also Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) ("But removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever removal is granted."); *Ross v. Yaspan*, No. CV 12-07048 DDP FFMX, 2013 WL 3448725, at *5 (C.D. Cal. July 9, 2013) (denying motion to award attorney's fees for unsuccessful removal because "Defendants did not lack an 'objectively reasonable basis for seeking removal'" (quoting *Lussier*, 518 F.3d 1062)). Defendant properly argued for removal using calculations from data and case law available. *See* Opp'n. Although the Court agrees with Plaintiff that the case should be remanded, the Court finds that Defendant did not lack an objectively reasonable basis for seeking removal, and there are no other unusual circumstances that would justify awarding attorney's fees. *See Martin*, 546 U.S. at 141.

Accordingly, the Court declines to award attorney's fees and each side shall bear its own fees and costs.

## V.     Disposition

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand. The Court REMANDS this action to the Superior Court of California, County of Orange.

The Clerk shall serve this minute order on the parties.